THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JESÚS ROSADO ROSADO and ANICASIA DÁVILA HERNÁNDEZ, Defendants and Appellants.

No. CR-72-8.     Decided October 20, 1972.

904

*Enrique Miranda Merced* for appellants. *Gilberto Gierbolini, Solicitor General,* and *Rurico E. Rivera Rivera, Assistant Solicitor General,* for The People.

PER CURIAM: Appellant, Jesús Rosado Rosado, was convicted of possessing and concealing and conveying heroin and for that reason he was sentenced to serve consecutively two sentences of from 7 to 10 years in the penitentiary. Appellant Anicasia Dávila Hernández was sentenced to serve from 6 to 8 years in the penitentiary for the same offense. The trial for both of them was held before the court. José Luis López, charged with the same accusations as appellants and who was riding in the same vehicle that appellant was driving at the time of the events which gave rise to these informations against the three, was found not guilty of the two charges preferred against him.

They assign that the evidence was insufficient and that it was not established that appellant Anicasia Dávila Hernández possessed the drug voluntarily, maliciously, and criminally.

The only evidence, for the prosecution, is correctly summarized by the defense as follows:

"Detective *Domingo Rentas,* who works for the Vice Control Squad of the Metropolitan Area, testified for the Prosecuting Attorney. He knows J. Rosado inasmuch as the latter resides at ward Ingenio of Toa Baja, and he (the witness) resides in ward Sabana Seca of Toa Baja. He frequently goes to ward Ingenio. He has known defendant, who is a barber, from 7 or 8 years. On May 26, 1970, he was patrolling in an official automobile together with agents Soler, Carlos Figueroa, and Víctor M. París. In going along Concepción Final Street, at stop 20:

'. . . I could see that a Hillman automobile, No. 566-121, was going in front of us and all of a sudden it stopped in front of us. I could see that the driver was Jesús Rosado whom I knew. I told agent Carlos Figueroa to stop in order to help him.

Q. What did you see that made you think that he was in need of help?

A. The automobile stopped all of a sudden and the engine stopped running. Since he was from a distant place I thought that there was some problem. When I got close to the driver's side and he noticed my presence *he took an envelope,* a blue package and he passed it to the girl Anicasia who is present here. [Italics in the original.]

Q. Who is Anicasia?

A. The girl there with the yellow skirt and the brown jacket.

PROSECUTING ATTORNEY:

He points at defendant.

Q. Describe the package that Rosado Rosado passed to defendant Anicasia.

A. Blue. She threw it out of the car in which she was travelling. She was going in the front seat next to the driver. I proceeded to go around the front of the car and picked up the package which she had thrown away. I inspected it and inside that package there were 15 wrappers which looked like decks and yellow paper like that used to wrap heroin, a dropper and a hypodermic needle. *I proceeded to identify myself as police agent* and informed them that they were under arrest and I submitted the aforementioned evidence to the police agent Edwin Medina, who advised me of the result and from there I took them to the court of

investigations where they were accused of drugs. [Italics in the original.]

Q. Who was riding in the front part of the car?

A. Jesús Rosado driving and Anicasia next to him.

Q. Was there any other person?

A. The fellow with the blue shirt in the back part and Agent Víctor M. París intervened with him.'

"Later he testified that:

'When Jesús Rosado passed it to Anicasia she seized it and dropped it in that manner by the right side of the automobile and it fell very close to the front wheel of the automobile.

Q. In what position were you?

A. Face to face to Jesús Rosado Rosado when I saw that he passed that package to her which she picked up from the automobile, I went around the front part of the car and seized the package.

Q. Taking as reference the front part of the automobile, where were you?

A. The front part looking towards Hato Rey and I was on the left hand side looking towards the front. There I saw that he passed the package to the girl and I went around and seized it. *Agent Figueroa stood in front of Jesús Rosado.'* [Italics in the original.]

"To questions from the defense he testified that agent Carlos Figueroa was the one driving the automobile. He had never seen the defendant. The automobile in which he was travelling was unlabelled. Jesús Rosado Rosado did not say anything to defendant when he passed the package to her. She threw it out of the automobile. He (the witness) was dressed as a civilian, without tie, in shirt sleeves. He did not get to talk with Jesus Rosado, inasmuch as upon seeing that action he left the place where he was standing and went around the front part of the vehicle to seize what had been thrown away. At that instant agent Figueroa alighted from the automobile and stood face to face to the door where Rosado was behind the steering wheel. He knew defendant Jesús Rosado as a barber. He did not know his private life.

"To questions from Attorney Maldonado he testified that:

'I alighted, went towards Jesús Rosado Rosado; I told agent Figueroa that I knew him. I went towards him and

*afterwards agent Figueroa and the other agents alighted too.*

Q. When did you notice that Jesús was driving the Hillman?

A. *I know perfectly well that it was he. I knew the automobile.*

Q. Did you know the license plate?

A. *566-121.'* [Italics in the original.]

"Agent Víctor M. París, testified that he worked in Vice Control. On May 26, 1970, at about 11:30 he was working as undercover agent by the sector of Stop 20, in relation to a bolita investigation. He was accompanied by Domingo Rentas, Figueroa, and Soler. He knows José Luis López. He saw him on that occasion. He continued testifying that:

'On that night they, Figueroa and Rentas, alighted to try to help them and they saw when the driver who was driving threw a package to the person who was to the right of the driver and *Soler and myself saw that the person who was riding in the back was alighting from the vehicle, immediately we got off, I alighted, I who was back of Figueroa's seat, I alighted and I saw when he put the hand inside the front right pocket of his pants and took something out, and dropped it to the floor.* And together with agent Soler I immediately detained him and I tried to see what he dropped and it was a manila envelope with two decks supposedly of heroin.' . [Italics in the original.]

"Regarding defendants Jesús Rosado and Anicasia Dávila the following incident took place, to questions from the Defense:

'Q. You said that you saw a person delivering an envelope to another?

A. Correct.

Q. Describe the envelope.

A. *A legal envelope.*

Q. What color?

A. *Blue.*

Q. Víctor, what is this I am showing you, is it your signature?

A. Correct.

Q. Did you read it?

A. Correct.

Q. See whether or not it is true that in that sworn statement a person passed a manila envelope to another and that that person dropped it, was it manila or blue?

A. It was blue, *the only thing that was inside the manila envelope was that blue one.*

Q. That is, it was not blue?

A. *Upon falling to the floor it was seen that it was blue.*

Q. *Which one was inside, the blue inside the manila or the manila inside the blue one?*

A. *The blue inside the manila.*

Q. For that reason you say that you saw a manila envelope being passed and that when it fell down it was blue?

A. *Upon falling a little bit showed, it didn't come out completely.'* [Italics in the original.]

"Chemist *Edwin Medina Vázquez* testified that he received the evidence from agent Domingo Rentas, analyzed it and it proved positive of heroin."

Agent Domingo Rentas testified on cross-examination, first, that he did not know the private life of appellant Rosado. He then testified that "He had some other knowledge of his person too" but that he had not said or written or made reference to anything other than the fact that he was a barber.

The parties stipulated that policeman Víctor París delivered to the chemist two wrappers of yellow paper containing white powder and the presence of heroin was determined in both decks.

■ The defense assigns that of the two agents that testified, one of them did not deserve any credibility whatsoever to the trial court while it believed the other's testimony which was of a similar nature ". . . so improbable . . . so clearly . . . invented that . . . it turned out insufficient to establish defendants' guilt beyond reasonable doubt." The record does not show that the trial judge stated the reasons he had to believe one agent and not the other.

The Solicitor General argues to the contrary that:

"There is nothing improbable in the story given by agent Domingo Rentas. The latter knew defendant-appellant who as well as he resided in the same town—Toa Baja—and he knew the former's occupation—barber. His presence in Santurce, far from his residence, with automobile troubles, reasonably motivated agent Rentas to offer his help because of said difficulties. Neither was it unreasonable that when the envelope was thrown out of the vehicle he got ready to pick it up and proceeded to examine it and that as a consequence of that inspection the seizure of the drug was produced.

.    .    .    .    .    .    .    .

"Neither is a conflict of evidence involved inasmuch as the defense did not present any. All rested on the sound discretion of the trial court as to the weighing of the evidence. In order to decide the case at bar in the manner in which it did, agent Rentas' testimony was sufficient."

■ It is necessary to point out that this is one of a series of recent cases in which the agent's testimony is to the effect that, upon approaching defendant for a specific reason, the latter threw away, hurled, or dropped to the ground a package or envelope that, upon being seized, it was determined that it contained heroin. The similitude of the testimonies on this particular in these cases lends itself to the reasonable inference that the police agents, in drug cases, have adopted this tactic of testifying for the reasons which the defense points out in this case.

From the foregoing we conclude that, in the absence of a satisfactory explanation of the trial judge as to why he gave credit to one testimony and not to the other which was similar to the former in a case which constitutes one of a series in which the evidence for the prosecution is similar to the effect that defendant has thrown, hurled or dropped a package or envelope which proves to contain heroin, he should have acquitted, as they are now acquitted, appellants of the charges which were preferred in this case, just as defendant López Gómez was acquitted of the same charges.

910

By virtue thereof the judgments rendered in this case by the Superior Court, San Juan Part, on May 4, 1971, will be reversed.

Mr. Justice Martín dissented.